Filed 2/11/25  In re C.F. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re C.F., a Person Coming Under the Juvenile Court Law. | C099217 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>C.F.,<br><br>        Defendant and Appellant. | (Super. Ct. No. STK-JD-DP-2022-0000034) |

Three-year-old J.L. died from dehydration.  He had various injuries on his emaciated body.  His nine siblings and half siblings, including then 14-year-old C.F., were taken into protective custody.  Mother Christina L. and father/stepfather Jose L. were arrested for willful harm or injury to a child.  In hearings involving mother, Jose L., and C.F.'s biological father Joel B., the juvenile court found that the children came within its jurisdiction under Welfare and Institutions Code section 300, subdivisions (a), (b), (g), (i) and (j).[1]

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

Mother now appeals from dispositional orders pertaining to C.F.[2] She contends the juvenile court abused its discretion in denying reunification services because the juvenile court did not consider C.F.'s feelings about reunifying with her. Finding no merit in the contention, we will affirm the juvenile court's dispositional orders pertaining to C.F.

BACKGROUND

City of Stockton Fire Department personnel were dispatched to the home of three-year-old J.L. on the evening of January 14, 2022, in response to a 911 call by J.L.'s 17-year-old half-brother A.B. J.L. was blue around the face and had no pulse. There were various injuries on J.L.'s body and red-colored vomit in his playpen. J.L. was transported to the hospital.

Hospital records show J.L. had an abrasion and hematoma on his forehead, signs of trauma to the extremities and head, minor old wounds and abrasions in various stages of healing, a rash around the groin and abdomen, and skin breakdown around the buttocks. There were clinical concerns J.L. was malnourished with signs of trauma and suspected neglect. J.L. was pronounced dead at 10:52 p.m. The San Joaquin County Office of the Medical Examiner subsequently identified hyponatremic dehydration due to probable unexplained chronic vomiting as the immediate cause of J.L.'s death. COVID infection was a contributing factor in the death. J.L. tested positive for a tetrahydrocannabinol (THC) metabolite. The medical examiner also noted the presence of a number of injuries on J.L.'s body. Weighing only about 17 pounds, he was below the fifth percentile in weight and height for his age.

Ten children lived in the home. Jose L. is the alleged father of the seven youngest children. Joel B. is the biological father of C.F. There was evidence that alcohol and

---

[2] Mother filed a writ petition challenging orders concerning seven of the other children. This court denied the petition.

2

marijuana were in the bedroom mother and Jose L. shared with seven of the children, and there were indications that the children were neglected. Law enforcement and the San Joaquin County Human Services Agency (the Agency) were contacted. C.F. was 14 years old at the time and reported that he slept in the garage. He had only eaten a hot pocket that day. His leg was bowed and he walked with a limp.

Mother and Jose L. were arrested for willful harm or injury to a child. The children were placed in protective custody and the Agency filed a juvenile dependency petition under section 300, subdivisions (b)(1), (f), (g) and (j) as to the nine surviving children.

At a detention hearing, the juvenile court concluded a prima facie showing was made of a substantial danger to the physical and mental health of the minors; there were no reasonable means by which their physical and mental health could be safeguarded without removal; the Agency made reasonable efforts to prevent the need to remove the minors from the home; the initial detention was justified because of the substantial danger to the physical and emotional health of the minors; and continuance in the parents' home would be contrary to the minors' welfare. The juvenile court ordered the minors detained and placed in the Agency's care.

Upon father Joel B.'s waiver of his rights, the juvenile court found a factual basis existed for the allegations in the petition, the allegations were true, and C.F. came within the provisions of section 300. The juvenile court placed C.F. with Joel B.

The juvenile court subsequently found, among other things, that the injuries to J.L. occurred in a nonaccidental fashion; J.L. had been struggling for some time; mother and Jose L. did not take action even though J.L. had special needs and feeding issues; C.F. had a leg injury and mother and Jose L. did not follow up with his care; the condition of the home was deplorable; Jose L. was drunk on the night of J.L.'s death; and there was evidence of prior abuse and neglect.

The Agency filed several disposition reports.  The first was filed on September 22, 2022.  It recommended no reunification services for mother pursuant to section 361.5, subdivisions (b)(4), (b)(6) and (e)(1) and no reunification services for Jose L.  The Agency recommended reunification services for father Joel B.  It recommended that C.F. remain in Joel B.'s home and receive mental health and other services, and that Joel B. receive mental health and education services.

A second amended juvenile dependency petition was filed as to all the minors in November 2022.  A supplemental disposition report was filed on December 16, 2022.  The Agency recommended no reunification services for mother pursuant to section 361.5, subdivision (b)(6).  It recommended family maintenance services for Joel B.  Another supplemental disposition report was filed on December 19, 2022.  The Agency again requested reunification services for Joel B.  Joel B. submitted on findings and orders for family reunification services on December 22, 2022.  C.F. was placed in a short-term residential therapeutic program in January 2023.  The Agency filed another supplemental disposition report on March 9, 2023.  It recommended family maintenance services for Joel B. and no reunification services for mother pursuant to section 361.5, subdivision (b)(6).

A contested disposition hearing was held on July 25, 2023.  Counsel for the Agency clarified the Agency was seeking bypass for mother and Jose L. under section 361.5, subdivisions (b)(4) and (b)(6).

The juvenile court heard argument from counsel on August 4, 2023.  As to C.F., the Agency noted that Joel B. had submitted on the findings and orders for family reunification services on December 22, 2022, and the Agency requested a dependent review at 6, 12, 18, and 24 months.  The juvenile court said it read the reports and considered the evidence, and it found that mother and Jose L. directly or indirectly caused  J.L.'s death.  The juvenile court adopted the proposed findings and orders on pages 13 to 22 of the report filed on March 10, 2023, with amendments by the Agency,

4

i.e., bypass for mother and Jose L. under section 361.5, subdivisions (b)(4) and (b)(6) only and proposed findings and orders as to both mother and Jose L.  Pages 13 to 22 of the report did not include findings and orders regarding adjudication of C.F. as a dependent child of the juvenile court, his removal from parental custody, or whether reunification services as to C.F. should be provided to mother or Joel B.  However, the juvenile court subsequently issued findings and orders pertaining to C.F. in connection with the hearing that had occurred on December 22, 2022.  The findings and orders adjudged C.F. a dependent child of the juvenile court.  It found by clear and convincing evidence that there was substantial danger to C.F.'s health, safety, protection, and physical and emotional well-being in mother's custody; there was no reasonable means by which C.F. could be protected without removing him from mother's custody; C.F. was left without any provision for his support; and mother could not arrange for C.F.'s care. The juvenile court further found that C.F. would benefit from father Joel B.'s receipt of reunification services.  It also found clear and convincing evidence that mother caused J.L.'s death through abuse or neglect and that reunification services for mother were not in C.F.'s best interest, and ordered no reunification services for mother pursuant to section 361.5, subdivision (b)(6).  Reunification services were provided for father Joel B.

Appellate briefing in this case was completed in December 2024.

## DISCUSSION

Mother contends the juvenile court abused its discretion in denying her reunification services because the juvenile court did not consider C.F.'s feelings about reunifying with her.[3]

Once the juvenile court takes jurisdiction in a dependency case, it must decide the appropriate disposition.  (*In re Stephen W.* (1990) 221 Cal.App.3d 629, 645; §§ 358,

---

[3]  Mother also asserts a threshold contention that her appeal is timely and not moot. Her concerns are not clear, but the Agency does not argue her appeal is untimely or moot. We address the merits of her appellate contention.

5

360, subd. (d), 361, 362.)  Among other things, it must consider whether to remove the child from the parents' care and, if removal is warranted, whether to order reunification services.  (*In re Stephen W.*, at p. 645; see also § 361.5, subd. (a).)  When, as here, a child is removed from a parent's custody, the juvenile court must order the social worker to provide family reunification services, unless the agency proves by clear and convincing evidence that the case falls within the provisions of section 361.5, subdivision (b), which are commonly called the bypass provisions.  (§ 361.5, subd. (a); *In re T.R.* (2023) 87 Cal.App.5th 1140, 1148.)  Under those provisions, reunification services need not be provided when the juvenile court finds, by clear and convincing evidence, that the child has been adjudicated a dependent pursuant to section 300 as a result of the infliction of severe physical harm to the child, a sibling, or a half sibling, by a parent and it would not benefit the child to pursue reunification services with the offending parent.  (§ 361.5, subd. (b)(6)(A).)

To challenge a juvenile court finding that reunification services need not be provided under section 361.5, subdivision (b), a parent must establish that reunification would be in the best interest of the child.  (*In re T.R., supra*, 87 Cal.App.5th at p. 1148.)  The juvenile court must determine whether reunification is in the best interest of the child by clear and convincing evidence.  (§ 361.5, subd. (c)(2).)  It " 'has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion.' "  (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 652.)

Mother challenges the order bypassing reunification services for her on the sole ground that the juvenile court failed to consider C.F.'s feelings about reunifying with her.  Mother did not object on that ground in the juvenile court.  But her contention lacks merit because C.F. participated in the preparation of the case plans presented to the juvenile court.  (See § 16501.1, subds. (b)(1) [the case plan shall be based on input from the child, among other things], (b)(5) [reunification services are one consideration in a case plan].)

6

The case plans provided for services for father Joel B. but not for mother. When asked about his preferred placement, C.F. said he wanted to go to a foster home. He did not indicate a desire to reunify with mother. And whether a child desires to be reunified with the offending parent is only one factor a juvenile court considers in determining whether, under section 361.5, subdivision (b)(6), reunification services will benefit the child. (§ 361.5, subd. (i); see *id.*, subd. (b)(6)(A).) It is not a dispositive factor.

Mother has not shown that the juvenile court abused its discretion in denying her reunification services.

## DISPOSITION

The dispositional order denying mother reunification services is affirmed.


_____/S/_____
MAURO, J.


We concur:


_____/S/_____
ROBIE, Acting P. J.


_____/S/_____
WISEMAN, J.*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7